UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 07-2787(DSD/SRN)


Jorge Bazaldua,

          Petitioner,

v.                                                    **ORDER**

Alberto Gonzales, Attorney
General, Denise Frazier,
District Director of USCIS,
Bloomington, Minnesota and
Scott Baniecke, Field Office
Director, Bloomington, Minnesota,
Immigration and Customs Enforcement,

          Respondent.


> Thomas R. Anderson III, Esq. and Robichaud & Anderson,
> 211 Washington Avenue North, Minneapolis, MN 55401,
> counsel for petitioner.
>
> Erika R. Mozangue, Assistant U.S. Attorney, 300 South
> Fourth Street, Suite 600, Minneapolis, MN 55415, counsel
> for respondent.


This matter is before the court upon a petition for a writ of habeas corpus relief pursuant to 28 U.S.C. § 2241 and petitioner's motion for a temporary restraining order. For the reasons that follow, the court denies the motion for a temporary restraining order.


**BACKGROUND**

On June 12, 2007, petitioner Jorge Bazaldua filed this habeas corpus action pursuant to 28 U.S.C. § 2241 to challenge the

Dockets.Justia.com

constitutionality of his imminent removal to Mexico by respondents Alberto Gonzales, United States Attorney General; Denise Frazier, District Director of the United States Citizenship and Immigration Services ("USCIS"), Bloomington, Minnesota; and Scott Baniecke, Field Office Director of the United States Immigration and Customs Enforcement ("ICE"), Bloomington, Minnesota. Petitioner contemporaneously moved for a temporary restraining order to prevent his removal, which was scheduled for the morning of June 13, 2007. Respondents have agreed to delay petitioner's removal until 5:00 p.m., June 15, 2007, to permit briefing of the issues implicated by the § 2241 petition and the motion to stay removal. The parties having now submitted their respective positions and the requested documents, the court resolves the petition and motion as follows.

Petitioner is a native and citizen of Mexico who entered the United States without inspection in 1993. (Resp't Ex. 1.) On May 20, 2003, petitioner pleaded guilty to third degree criminal property damage in violation of Minnesota Statutes section 609.595(2)(a) in Kandiyohi County, Minnesota District Court. Petitioner was sentenced to one year imprisonment and two years probation. On April 13, 2007, the United States Department of Homeland Security found petitioner to be subject to administrative removal proceedings and served him with a Notice of Intent to Issue

a Final Administrative Removal Order.[1]  On April 30, ICE issued a Final Administrative Removal Order, determining petitioner was removable under 8 U.S.C. § 1227(a)(2)(A)(iii) because his conviction for third degree property damage is an aggravated felony, as defined by 8 U.S.C. § 1101(a)(43)(F).[2]

On May 9, 2007, Bazaldua timely filed a petition for review of the removal order and moved the Eighth Circuit Court of Appeals to stay removal pending the Eighth Circuit's consideration of his petition for review.  On June 4, 2007, the Eighth Circuit dismissed the appeal for lack of jurisdiction and denied petitioner's motion to stay removal as moot.  (Id.)  In his petition for review to the Eighth Circuit, petitioner did not raise or challenge the validity of his 2003 state court conviction or the effectiveness of his counsel during the state court proceeding.  Following the Eighth Circuit's decision, petitioner's removal was scheduled for June 13, 2007.

On June 12, 2007, petitioner filed a post-conviction motion to vacate and set aside his 2003 conviction in Kandiyohi County.

---

[1]  On April 19, 2007, Immigration Judge Joseph R. Dierkes denied petitioner's request for a bond redetermination hearing and change in custody status on the basis that petitioner was subject to § 238(b) administrative removal proceedings and therefore the immigration court had no jurisdiction to consider bond.  See 8 C.F.R. § 238.1(g).

[2]  Aggravated felony is defined to include, among other things, a crime of violence for which a term of imprisonment of at least one year is imposed.  8 U.S.C. § 1101(a)(43)(F).

(Pet'r Ex. 1.) Petitioner bases his motion to vacate on his allegations that his state court attorney led him to believe he had no option other than to plead guilty and failed to adequately explain his trial rights or the potential collateral immigration consequences of pleading guilty. (Id.) Petitioner also asserts that in his post-conviction motion for relief he will argue to the state court that the factual basis for his guilty plea was not adequate and that he intends to challenge "the stop and interrogation under the Vienna Convention, Article 36, which grants him the right to consult with his consulate." (Pet's Mem. Law at 4.) According to petitioner, his goal in challenging his 2003 guilty plea is to stand trial on the third degree property damage charges and "exercise his rights as an accused." (Id. at 2.)

At the same time petitioner filed his post-conviction motion in state court, he filed this § 2241 petition to stay his removal until the state court rules on his motion to vacate his 2003 conviction. According to petitioner, deporting him prior to a state court ruling on the motion to vacate his guilty plea would be a violation of his Fifth Amendment right to due process. Petitioner contends that if he successfully vacates his guilty plea on the basis that he received ineffective assistance of counsel during the state court proceeding, he will no longer be subject to administrative removal. The government opposes petitioner's motion

for a temporary restraining order and moves to dismiss the § 2241
petition for lack of jurisdiction.

## DISCUSSION

### I.   Jurisdiction

Significant to the court's determination is that petitioner is
not seeking review of the removal order or contesting that he is
currently administratively removable.  Rather, petitioner claims
only that his removal prior to a state court ruling will deny him
of his Fifth Amendment rights because he will be precluded from
exhausting his state court post-conviction remedies.  On May 11,
2005, Congress enacted the Real ID Act of 2005.[3]   Section
106(a)(1)(B) of the Real ID Act amended § 1252 of the Immigration
and Naturalization Act to expressly divest federal district courts
of jurisdiction over § 2241 petitions that seek review of INS
removal orders.  See 8 U.S.C. § 1252(a)(5).  Specifically, district
courts  have no jurisdiction, habeas or otherwise, over "any final
order of removal against an alien who is removable by reason of
having  committed  a  criminal  offense  covered"  in  8  U.S.C.
§ 1227(a)(2)(A)(iii).  8 U.S.C. § 1252(a)(2)(C).  Judicial review
of such removal orders remains only in the appropriate court of

_____

        [3]   The Real ID Act was enacted as part of the Emergency
Supplemental Application Act for Defense, The Global War on Terror,
and Tsunami Relief, 2005.  See Pub. L. 109-13, 119 Stat. 231 (May
11, 2005).

appeals for "constitutional claims or questions of law" raised pursuant to a petition for review. 8 U.S.C. § 1252(D); <u>Tostado v. Carlson</u>, 481 F.3d 1012 (8th Cir. 2007).

However, the Real ID Act did not deprive district courts of constitutional challenges to an alien's indefinite detention when the alien does not directly contest the underlying removal order. <u>See</u> <u>Moallin v. Cangemi</u>, 427 F. Supp. 2d 908, 918-21 (D. Minn. 2006) (discussing residual habeas jurisdiction of district courts subsequent to passage of the Real ID Act). In enacting the Real ID Act, Congress did not intend to "'preclude habeas review over challenges to detention that are independent of challenges to removal orders,'" but rather only of "'challenges to removal orders.'" <u>Id.</u> at 920 (quoting H.R. Conf. Rep. No. 109-72, 151 Cong. Rec. H2813-01, at H2873). Accordingly, district courts retain jurisdiction over § 2241 petitions that challenge aspects of detention unrelated to the merits of the removal order. <u>See</u> <u>id.</u> at 921 (collecting cases). Similar to the petitioner in <u>Moallin</u>, Bazaldua does not challenge the removal order but only the constitutionality of the timing of his removal prior to a state court ruling on his post-conviction petition in Kandiyohi County. Therefore, the court retains jurisdiction pursuant to § 2241 to reach the merits of petitioner's motion to stay because Bazaldua challenges only the constitutionality of the timing of the execution of the final removal order.

6

## II.  Temporary Restraining Order

To determine whether the extraordinary remedy of issuing a stay of removal is warranted, the court balances four factors: (1) is there a substantial threat that petitioner will suffer irreparable harm if relief is not granted, (2) does the irreparable harm to petitioner outweigh any potential harm that granting a temporary restraining order may cause respondents, (3) is there a substantial probability that petitioner will prevail on the merits and (4) what action is in the public interest. Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc). For purposes of this motion, the court presumes that petitioner will be irreparably harmed if deported to Mexico and that removal without a hearing on his state court post-conviction petition outweighs any potential harm to respondents in delaying his removal. However, even if the court presumes these two factors are in petitioner's favor, they are offset by the remaining two factors which weigh strongly in favor of respondents.

### A.  Likelihood of Success on the Merits

As a threshold matter, petitioner has provided no authority to support his argument that removal prior to the filing of an untimely post-conviction motion would violate his due process rights. First, each court to address the issue has unequivocally held that the pendency of collateral attacks on state court convictions through post-conviction motions does not affect the

7

finality of a criminal conviction for immigration purposes, unless and until the conviction is overturned. Okabe v. I.N.S, 671 F.2d 863, 865 (5th Cir. 1982); see also In re Onyido, 22 I. & N. Dec. 552 (B.I.A. 1999). "Once an alien has been convicted by a court of competent jurisdiction and exhausted the direct appeals to which he is entitled, his conviction is final for the purpose of the immigration laws." Grageda v. I.N.S., 12 F.3d 919, 921 (9th Cir. 1993) (internal quotations omitted) (pending collateral attack does not alter finality of state court conviction for purposes of deportation); see also Aguilera-Enriquez v. I.N.S., 516 F.2d 565, 570-71 (6th Cir. 1975) (post-conviction motions do not negate finality of state court conviction).

Second, as to petitioner's right to procedural due process, the "fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976). To determine whether petitioner's procedural due process rights would be violated by his deportation, the court considers the nature of the private interest to be affected by governmental action, the risk of erroneous deprivation of that interest and the government's interest in using current procedures, coupled with the probable value of additional or substitute safeguards. Id. at 335. "The constitutional sufficiency of procedures provided in any situation ... varies with the circumstances." Ochoa-Carrillo v. Gonzales, 437 F.3d 842, 847

8

(8th Cir. 2006). "To succeed on a due process claim, an alien must prove that he was actually prejudiced by the lack of process afforded to him." Id. (internal quotations omitted).

In this case, petitioner is unable to show that he has been prejudiced by any lack of process because the four-year delay in seeking post-conviction relief is a result of his own deliberate inaction. He has identified no circumstances that have changed since May 20, 2003, relevant to his current allegations of ineffective assistance of counsel. To permit a stay of removal pending speculative post-conviction relief would "substantially do away with deportation for conviction as the ingenious deportee could by a succession of post-conviction proceedings postpone finality of judgment." Montenegro v. I.N.S., 245 F. Supp. 2d 936, 940-41 (C.D. Ill. 2003) (rejecting due process claim based on pending post-conviction relief). Petitioner provides no authority to support a due process violation predicated on a pending post-conviction motion. Therefore, there is minimal probability that he is likely to succeed on such a claim.

Third, the likelihood that petitioner could succeed on his state court motion to vacate is minimal.[4] Pursuant to Minnesota

_____

[4]  Petitioner also summarily asserts that if given the opportunity he will argue in his post-conviction motion that his stop and subsequent interrogation were in violation of his right to consult with his consulate under Article 36 of the Vienna Convention. However, petitioner's right to consult with consulate is subject to procedural default. Sanchez-Llamas v. Oregon, 126 S.
(continued...)

Rule of Criminal Procedure 15.05, subdivision 1, a plea of guilty may be withdrawn if a motion is "timely" and establishes that "withdrawal is necessary to correct a manifest injustice." Under Minnesota law, to be valid, a guilty plea "must be accurate, voluntary and intelligent." James v. State, 699 N.W.2d 723, 728 (Minn. 2005). Once a defendant has been sentenced, a motion to withdraw a plea must be raised in a petition for post-conviction relief pursuant to Minnesota Statutes section 590.01. Id. at 727. Delay in moving to withdraw a guilty plea is a relevant factor in determining whether relief is warranted and may weigh against petitioner. "Deliberate or inexcusable" delay in pursuing post-

---

[4](...continued)
Ct. 2669, 2687 (2006). Further, the Supreme Court has held that suppression is not an appropriate remedy for governmental failure to inform a defendant of consular-notification rights, reasoning that such a violation

> is at best remotely connected to the gathering of evidence. Article 36 has nothing whatsoever to do with searches or interrogations. Indeed, Article 36 does not guarantee defendants *any* assistance at all. The provision secures only a right of foreign nationals to have their consulate informed of their arrest or detention — not to have their consulate intervene, or to have law enforcement authorities cease their investigation pending any such notice or intervention. In most circumstances, there is likely to be little connection between an Article 36 violation and evidence or statements obtained by police.... The failure to inform a defendant of his Article 6 rights is unlikely, with any frequency, to produce unreliable confessions.

Id. at 2681. The court concludes defendant does not have a substantial likelihood of successfully vacating his guilty plea based on an untimely alleged violation of his consular-notification rights.

conviction relief may constitute "an abuse of the judicial process." <u>McMaster v. State</u>, 551 N.W.2d 218, 218-19 (Minn. 1996) (abuse of judicial process to purposefully delay post-conviction relief to avoid extradition to a foreign jurisdiction).

Petitioner did not independently move to challenge or vacate his 2003 guilty plea based on inadequate legal advice for more than four years, but acted for the first time on June 12, 2007. The primary basis for the current motion to vacate is that but for ineffective assistance of counsel, petitioner would not have pleaded guilty but would have exercised his trial rights. Petitioner has not identified any alleged breach of the plea agreement, nor does he contend factual innocence. Coupled with the untimely nature of his state court motion and the grounds that he has identified, the court finds petitioner is not likely to succeed in establishing that vacating his guilty plea is necessary to prevent a manifest injustice.

For all these reasons, the court concludes that the factor of likelihood of success on the merits weighs heavily in favor of respondents.

**B.  Public Interest**

Lastly, there is a strong public interest in the finality of immigration proceedings and the timely execution of removal orders once an alien has been conclusively determined to be subject to administrative removal. The Real ID Act reflects congressional

intent to "expedite removal while restoring judicial review of constitutional and legal issues." Grass v. Gonzales, 418 F.3d 876, 879 (8th Cir. 2005). This action is analogous to motions to reopen deportation proceedings, petitions for rehearing and motions for new trial, all of which are "disfavored because of the strong public interest in bringing litigation to a close." Raffington v. I.N.S., 340 F.3d 720, 722 (8th Cir. 2003). "Granting such motions too freely will permit endless delay of deportation by aliens creative and fertile enough to continuously produce new and material facts" relevant to their pending deportation. Id. (internal quotations omitted).

Petitioner's state court conviction is final for purposes of immigration proceedings. He has exhausted his right to petition for review from the Eighth Circuit Court of Appeals. He has failed to establish that he is likely to succeed in the state court action or that he will be able to establish in this action that his removal prior to a state court ruling will violate his Fifth Amendment rights. Based on these facts, the court finds that the public interest in the expeditious execution of the final removal order issued by ICE weighs strongly in favor of respondents.

For the above reasons, the court concludes that the Dataphase factors weigh in favor of respondents and against the granting of a stay of removal. See 640 F.2d at 114.

**CONCLUSION**

Therefore, **IT IS HEREBY ORDERED** that petitioner's motion for a temporary restraining order [Doc. No. 2] is denied.

Dated:  June 15, 2007

s/David S. Doty
David S. Doty, Judge
United States District Court